Exhibit 1



June 18, 2020

<u>Via email</u>

Robert Frazer, AUSA
Naazneen Bashir Khan, AUSA
United States Attorney's Office
970 Broad Street
Newark, NJ 07102

      Re:  USA v. Michael Healy
            18-cr-703 (JMV)

### **<u>Brady Demand Letter</u>**

Dear Mr. Frazer and Ms. Khan:

    Michael Healy (Healy) was indicted for three death-eligible murders. The government's Rule 16 discovery, so far, consists of 614 GB of data which includes PDF, video and audio files.

    The government is obligated pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>United States v. Bagley</u>, 473 U.S. 667 (1985), and <u>Kyles v. Whitley</u>, 514 U.S. 419 (1995) to turn over to the defendant the following:

(1) information that would exonerate the accused;
(2) exculpatory information;
(3) information that would lessen the punishment;
(4) all material impeachment of the government's evidence or witnesses; and

---

750 Valley Brook Avenue │ Lyndhurst │ New Jersey 07071 │ 201.935.3005 │ 201.935.7667 ∞ fax
tambrosio@legal750.com

(5) any evidence that would support a valid defense.

We have spent the past seven months, along with our client, reviewing the discovery. We have reviewed enough of it to be able to state that we do not believe the government has fully complied with its <u>Brady</u> obligations. That belief is based upon the following factors: (1) the theory of the case as alleged in the indictment, (2) the large number of alleged co-conspirators, (3) the six-year duration of the RICO conspiracy, (4) the multi-state expanse of the conspiracy, (5) the large number of law enforcement agencies involved in the investigation of this case, and (6) persons other than Healy who may have had a motive to kill the victims.

The following is a partial synopsis of the evidence we have encountered in our review of the discovery with a focus on the evidence pertaining to Healy.

## **The Indictment**

The indictment alleges that Healy is the leader of the "Healy DTE" a large multi-state drug trafficking organization formed by Healy in 2014 and that Healy killed Teddy and Joey because he believed that they had become government informants against him. The third murder victim was an innocent victim, mistakenly misidentified by his killers as Teddy.

## **"Teddy"**

In 2014 Teddy was the subject of a Union County criminal investigation. At the time he was 40 years old and a convicted felon who had served time in state prison. A large quantity of drugs was seized from his house during the execution of a search warrant. Teddy was arrested and charged with first degree drug charges, exposing him to 40+ years in prison. Teddy ultimately agreed to become a cooperator, presumably to avoid risking the possibility of spending the rest of his life in prison.

We assume, based on our experience, that Teddy was told by your office and/or the State prosecutors that any reduction in his sentence would be a function of the level of assistance he provided to the government. The more drug dealers and drugs he helped law

enforcement get off the streets, the greater his sentence would be reduced and if his assistance was good enough he could possibly get probation or granted immunity.

**Joey**

Joey was a convicted felon and member of the Latin Kings, a violent street gang with a substantial foothold in Newark and the surrounding towns. Joey was an active drug dealer and associated with Teddy.

**No direct evidence**

The government's theory against Healy is simple: the three victims were killed because Healy thought they were cooperating against him and the Healy DTE. Despite this simple theory, we have yet to encounter direct evidence that proves Healy either committed the murders or that he conspired to commit any of the murders. Additionally, we have yet to find direct evidence to prove Healy committed the killings because he thought the victims were cooperating against him.

We assume that in order to prove its case, the government will rely on circumstantial evidence provided by the testimony of multiple cooperating witnesses.

Testimony from cooperators, if believed by the jury, could lead to Healy's conviction and to a possible death sentence. It is common knowledge that defendants are routinely convicted based upon the testimony of cooperators. Conversely, if the jury thought the cooperators were lying, it could lead to Healy's acquittal or to a sentence of life imprisonment (in the event the case went to a penalty phase).

A trial defense that Healy might pursue is: the victims were killed by a person(s) unrelated to Healy and by a person(s) who had a motive(s) totally unrelated to Healy. The more evidence to support this defense the greater the likelihood that Healy could raise reasonable doubt in the minds of the jurors, possibly avoiding being convicted or avoiding being sentenced to death.

In reviewing the discovery we have yet to find any "smoking gun" linking Healy to the killings. We found no DNA, ballistics, fingerprints, video, recorded phone calls, text messages, social media, or cell phone data which directly link Healy to the killings or to the existence of the "Healy DTE".

The lack of direct evidence against Healy is pointed out to underscore the importance of what we have characterized as "circumstantial Brady evidence". Circumstantial evidence is an extremely powerful tool in the government's trial arsenal. Likewise, it can be just as important a defense tool for a defendant, especially a defendant facing a capital prosecution. Any circumstantial evidence that can be used by Healy to suggest to a jury that he did not kill or conspire to kill the victims and any circumstantial evidence that can be used by him to suggest that he was not the leader of a DTE is what we consider "circumstantial Brady evidence" which must be turned over to the defendant immediately.

Based upon the legal principles and potential defenses set forth above, Healy demands that the government immediately turn over to him the following discovery:

Brady Demand #1

Immediate production of evidence (direct or circumstantial) that someone other than Healy killed any of the victims.

Brady Demand #2

Immediate production of evidence (direct or circumstantial) that someone other than Healy had a motive to kill any of the victims.

Brady Demand #3

Immediate production of all statements of Teddy, whether written, electronic, or memorialized in reports, during his time as a cooperator (time as a cooperator is meant include statements made by Teddy before he was signed on as a cooperator) in any federal

or state investigation regardless of who Teddy may have been attempting to cooperate against.

Brady Demand #4

All reports which reference any activities of Teddy as a cooperator.

Brady Demand #5

The names of all persons Teddy cooperated against.

Brady Demand #6

The names of all persons that Teddy attempted to cooperate against.

Brady Demand #7

Reports from any law enforcement agent or agency which reference any cooperation efforts by Teddy.

Brady Demand #8

Any reports or evidence of any kind which detail the evolution and the operation of a drug trafficking organization (DTE) potentially led by Teddy.

Brady Demand #9

Any reports or evidence of any kind which detail the evolution and the operation of the HEALY DTE, specifically including any evidence that Healy was the leader of the Healy DTE as charged in the indictment.

Brady Demand #10

Any evidence that suggests the three killings alleged in the indictment were not related.

Brady Demand #11

The first-in-time law enforcement report that uses the terminology "the Healy DTE".

Brady Demand #12

Any evidence of Matt Robinson's drug trafficking activities which are separate and apart from the alleged Healy DTE.

Brady Demand #13

Any evidence of Michael Dolias's drug trafficking activities which are separate and apart from the alleged Healy DTE.

Brady Demand #14

Any evidence of legitimate sources of income earned by Healy during the time span of the indictment.

Brady Demand #15

Any evidence related to the use of the airplane referenced in the indictment suggesting that it was being used for activities outside of the Healy DTE.

Brady Demand #16

Any evidence that would suggest that any of Healy's co-defendants were engaged in separate drug distribution conspiracies and/or separate murder conspiracies than the conspiracies charged in the indictment.

Brady Demand #17

Any statements obtained in a proffer given by co-defendant Leevander Wade which were presented to the grand jury. (If evidence of this type exists, it would be grounds for dismissal of the indictment.)

Brady Demand #18

All Giglio material for Teddy and Joey.


Brady Demand #19

All evidence related to Joey's involvement with the Latin Kings, including but not limited to law enforcement reports and gang intelligence reports.


Brady Demand #20

All reports from involving law enforcement activity at 293 Ampere Parkway, Bloomfield, NJ.


Brady Demand #21

Any evidence that Ben Rappaport legally or illegally purchased or used firearms, not limited to the Smith & Wesson M&P 556 rifle referenced in the indictment.


    We thank you for your anticipated cooperation in providing the above requested information in an expeditious as possible manner.

                              Very truly yours,

                              */s/Thomas Ambrosio*
                              */s/Stephen Turano*
                              Thomas Ambrosio
                              Stephen Turano

cc:  Michael Healy (via regular mail)



June 25, 2020

<u>Via email</u>

Robert Frazer, AUSA
Naazneen Bashir Khan, AUSA
United States Attorney's Office
970 Broad Street
Newark, NJ 07102

      Re:  USA v. Michael Healy
           18-cr-703 (JMV)

**<u>Brady Demand Letter – Additional Request</u>**

Dear Mr. Frazer and Ms. Khan:

    Please accept this letter as a supplement to our June 18, 2020 <u>Brady</u> demand letter.

    Please provide us with the June 18, 2018 audio/video statement of Steven Cappiello. Cappiello gave a statement that Teddy was killed by a person named "Corn roll". That statement is discoverable pursuant to <u>Brady</u> and its progeny.

    Attached for your convenience are 2 pages in discovery referencing Cappiello's statement and the fact that it was recorded.

    We thank you for your anticipated cooperation in providing the above requested information in an expeditious as possible manner.

```
                        Very truly yours,

                        /s/Thomas Ambrosio
                        /s/Stephen Turano
                        Thomas Ambrosio
                        Stephen Turano
```

Attachment

cc:   Michael Healy (via regular mail w/o attachment)



**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

---

*Robert L. Frazer*  *970 Broad Street, Suite 700*  *Direct Dial: (973) 645-2897*
*Assistant United States Attorney*  *Newark, New Jersey 07102*  *Facsimile: (973) 645-3497*
   *robert.frazer@usdoj.gov*

September 17, 2020

Thomas Ambrosio, Esq.
Stephen Turano, Esq.

    Re:    United States v. Michael Healy.
   Crim. No. 18-703 (JMV)

Dear Counsel:

    The Government makes the following disclosures pursuant to its continuing duties under the Court's Order For Discovery and Inspection, Rule 16(a) of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. 83 (1963), and in response to your letter dated June 18, 2020. The Government will comply with its *Brady* obligations on a continuing basis. The Government by this production does not concede any of this information constitutes "*Brady* material," but turns this information over in an abundance of caution, recognizing that the Government's standard in this area goes beyond what is required by *Brady*[1]:

    Brady Demand ("BD") #1:

    The Government is not aware of any additional evidence responsive to this demand. See discovery for homicide incidents regarding other investigative leads followed up on by law enforcement looking at potential suspects other than Mr. Healy.

    BD #2:

    This demand is overbroad and speculative. The Government could not be in a position to determine whether someone was "motivated" to kill the victims.

    BD #3:

    Statements of Aristedes Stadiroudis ("Teddy") given to the Union County Prosecutor's Office and the DEA during his cooperation have been provided in discovery. The Government is not in possession of any other reports regarding Teddy cooperating with law enforcement prior to 2017. Though not required to do so, the Government made

---

[1] Justice Department policy recognizes that a fair trial will often include examination of relevant exculpatory or impeachment information that is significantly probative of the issues before the court but that may not, on its own, result in an acquittal or, as is often colloquially expressed, make the difference between guilt and innocence. As a result, this policy requires disclosure by prosecutors of information beyond that which is "material" to guilt as articulated in *Kyles v. Whitley*, 514 U.S. 419 (1995), and *Strickler v. Greene*, 527 U.S. 263, 280-81 (1999).

inquiries with the Union County Prosecutor's Office to see if any such reports from before 2017 existed within that office. UCPO personnel stated no such reports exist.

BD #4:

DEA reports regarding Teddy's cooperation with DEA, including information regarding cooperation on matters other than Healy have been provided in discovery.

BD #5:

See DEA reports already provided in discovery.

BD #6:

See DEA reports already provided in discovery.

BD #7:

This is overbroad. All reports pertaining to Teddy's cooperation during the time period of the charged conspiracy known to the Government and in the Government's possession have been provided.

BD #8:

Any information regarding bad acts or prior convictions pertaining to Teddy is not Brady material.

BD #9:

Any such information is not Brady material. All discoverable reports regarding "the evolution and the operation" of the Healy DTE have been turned over. Any Jencks material related to Healy's involvement in the Healy DTE will be turned over at the time prescribed by statute. .

BD #10:

There is no direct evidence the murders were not related. However, early in the investigations of the charged homicides, local law enforcement did investigate other avenues as detailed in reports previously turned over in discovery. Investigation into the murder of Juan Santos Martinez, for example, centered around his family before evidence was developed leading to the charges in this case. See reports already provided. In the Joey Colon murder, as contained in the reports previously turned over, law enforcement originally looked into ties he or his family may have had with local gangs before evidence was developed leading to the charges in this case.

BD #11:

The Healy "DTE" is a term used for charging the Indictment. A "Drug Trafficking Enterprise" defines the organization charged in the RICO charges in this case. The Government is unaware of any law enforcement report using that specific term.

BD #12:

Any such information does not constitute Brady material.

BD #13:

Any such information does not constitute Brady material.

BD# 14:

Evidence of "legitimate" income is not Brady material.

BD #15:

Any information that the airplane was used for activities other than drug activity, in addition to drug activity, is not Brady material.

BD #16:

Any information that Healy's co-conspirators were also involved with other murders, not charged in the Indictment, is not Brady material. Information that co-conspirators sold drugs separate and apart from the Healy drug conspiracy is not Brady material.

BD # 17:

No statements made by Leevander Wade were presented to the Grand Jury.

BD # 18

Bad acts or prior convictions of the murder victims are not discoverable at this time, do not constitute Brady material, and may not be admissible at trial under the prevailing case law.

BD #19:

See homicide reports for Joey Colon murder previously turned over. The Government is not in possession of any other reports regarding Joey Colon's possible involvement in the Latin Kings street gang.

BD # 20:

All relevant reports involving activity at 293 Ampere Parkway in the Government's possession have been turned over.

BD # 21:

Any such information, if it exists, would not constitute Brady material and would not be discoverable at this time.

        Respectfully Submitted,

        CRAIG CARPENITO
        United States Attorney

BY:   ROBERT L. FRAZER
        Assistant U.S. Attorney

Received
October 12, 2020



**U.S. Department of Justice**

United States Attorney
District of New Jersey

Naazneen Khan
Assistant United States Attorney

970 Broad Street, Suite 700
Newark, New Jersey 07102
Direct Dial: 973-353-6016

September 17, 2020

Emma M. Greenwood
Attorney at Law
Greenwood Law Group, PLLC
299 Broadway, Suite 802
New York, NY 10007

   Re: United States v. Michael Healy, et al.

Dear Ms. Greenwood:

  This letter addresses the previously turned over discovery that defense had issues with. Enclosed are new copies that are being provided in electronic format. To the extent that any of the disks require passwords, those passwords have been written directly on the disks and are case-sensitive. The items are as indicated below:

- Jail calls for Thomas Zimmerman;
- Jail calls for Tyquan Daniels;
- Jail calls for Ali Hill;
- Surveillance footage for 197 Lake Street, please note that the folder "197 lake" is empty in the master copy;
- Surveillance footage from 261 N. 17th Street, provided in the form of a flash drive;
- Statement of Steven Cappiello, as requested by counsel for Michael Healy.

    Please do not hesitate to contact me with any questions or issues regarding the discovery provided.

Very truly yours,

CRAIG CARPENITO
United States Attorney

By: _____
Naazneen B. Khan
ASSISTANT UNITED STATES ATTORNEY

Encls.