

**U.S. Department of Justice**

*United States Attorney*
*District of New Jersey*

*970 Broad Street, 7th floor*　　　　　　　　　　　　　　　　　　973-645-2700
*Newark, New Jersey 07102*

May 19, 2021

**BY ECF**
Hon. John Michael Vazquez
United States District Judge
United States Courthouse and Post Office
Newark, New Jersey 07102

      Re: <u>United States v. Michael Healy, et al.</u>, Crim. No. 18-703

Dear Judge Vazquez:

    The government respectfully submits this letter in response to defendant Michael Healy's motion to declare his capital prosecution unconstitutional. <u>See</u> ECF No. 113 ("Def. Mot."). For the reasons set forth below, the motion should be denied.

    **Background**

    On June 5, 2019, the defendant was charged in a twelve-count Superseding Indictment under Criminal Number 18-703 with violations of both the substantive and conspiracy provisions of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, Title 18, United States Code, Sections 1962(c), 1961(1), and 1961(5), and, as applicable here, four capital-eligible counts of murder,[1] among other drug and firearms charges.

    The murder of Victim-1 charged in Count Three, which took place on February 3, 2018, involved Healy acting upon his belief that A.S., an associate in his drug enterprise, was cooperating with law enforcement. Healy and his co-defendant, Leevander Wade, contacted members of a local Bloods street gang to carry out a hit on A.S. In an attempt to carry out this murder, Victim-

---

[1] Those counts are: Count Three (February 3, 2018 murder of Victim-1); Count Five (March 12, 2018 murder of A.S.); and Count Eight (April 6, 2018 murder of J.C.), all charged under Title 18, United States Code, Section 1959(a)(1) and Section 2; and Count Six (Conspiracy to Murder a Federal Witness, A.S.), charged under Title 18, United States Code, Section 1512(k).

1, an innocent citizen who happened to be parked outside A.S.'s residence, was killed.

The murder of A.S. charged in Counts Five and Six, which took place on March 12, 2018, involved Healy ordering his co-conspirators to correct their mistake from February 3rd and complete the plot to murder A.S. The co-conspirators shot and killed A.S. as he was walking his dog near his residence.

The murder of J.C. charged in Count Eight, which took place on April 6, 2018, involved Healy's belief that J.C., a drug associate of A.S.'s, was also cooperating with law enforcement. Healy shot and killed J.C. in a drive-by shooting in Newark, New Jersey. Co-defendant Wade drove the vehicle he and Healy were in during the murder.

Upon return of the Superseding Indictment in June 2019, the government sought mitigation submissions from defense counsel so that the United States Attorney for the District of New Jersey could make a recommendation to the Attorney General as to whether or not the Attorney General should authorize a death-penalty prosecution. See United States Department of Justice, Justice Manual, §§ 910.010 to 9-10.120, available at https://www.justice.gov/jm/jm-9-10000-capital-crimes#9-10.010. As the Court is aware, Department of Justice protocols require that the defendant shall have a "reasonable opportunity to present information for the consideration of the United States Attorney or Assistant Attorney General which may bear on the decision whether to seek the death penalty." Id. § 9-10.080.

Counsel thus had at least[2] eight months prior to the start of the pandemic to begin Healy's mitigation investigation after the Government presented death-eligible charges. Moreover, while not counsel's preferred course, counsel has had the ability to communicate with Healy by way of telephone and/or video conferences throughout the pandemic. Much in the way that courts throughout the country have, throughout the unprecedented health crisis, found alternative methods to our prior procedures—even if less ideal—counsel has been afforded an alternative option to maintain contact with Healy and further the mitigation process.

The government is presently awaiting the defendant's mitigation submission. At the defendant's request, the Government granted multiple extensions to the deadline for such a submission. The latest deadline for

---

[2] Learned counsel was appointed on April 16, 2019 (Dkt. No. 22), months before the Superseding Indictment. Thus, learned counsel could have begun the mitigation investigation approximately 11 months prior to the pandemic.

submission is June 30, 2021, more than two years after the Superseding Indictment was returned.[3]  The Court has not yet set a briefing schedule for motions or a trial date.

The defendant now moves for "an order from the Court permanently barring the Government from seeking the death penalty" because of the alleged mishandling of the COVID-19 pandemic by the administration of former President Donald J. Trump.  Def. Mot. at 1.  Specifically, the defendant urges that the former executive administration's actions "prolonged and worsened" the COVID-19 pandemic, which, according to Healy, has "permanently undermined his ability to conduct adequate mitigation investigation pursuant to 18 U.S.C. § 3592 and has permanently denied him the right to have a fair death penalty trial, in violation of the Fifth, Sixth and Eighth Amendments."  Id. at 1, 3.

For the reasons that follow, Healy's motion should be denied.

### The Defendant's Arguments Are Premature Because the Government Has Not Yet Given Notice that It Intends to Seek a Sentence of Death

As an initial matter, because the Department of Justice has not yet indicated whether it will seek a sentence of death against Healy, his motion to declare his capital prosecution unconstitutional should be denied as premature or, at the very least, stayed until it is determined whether the government will seek the death penalty against him.

Ruling on the issue now would be akin to issuing an advisory opinion.  Ripeness, like other justiciability doctrines, ultimately derives from Article III's requirement that federal courts may decide only cases and controversies.  Felmeister v. Office of Attorney Ethics, 856 F.2d 529, 535 (3d Cir.1988); see also Nextel Communications of the Mid-Atlantic, Inc. v. City of Margate, 305 F.3d 188, 192 (3d Cir. 2002).  The Supreme Court has stated that to meet the ripeness standard, plaintiffs must show either a specific present objective harm or the threat of specific future harm.  Laird v. Tatum, 408 U.S. 1, 14 (1972).  Furthermore, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  Gov't Emps. Ret. Sys. v. Turnbull, 134 F. App'x 498, 500 (3d Cir. 2005) (citing Texas v. United States, 523 U.S. 296, 300 (1998) (internal citations omitted)); United States v. Blackburn, 461 F.3d 259, 261 (2d Cir. 2006) ("In order to satisfy the case-or-controversy requirement, a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." (internal quotation marks omitted)); United States

---

[3]   The four co-defendants submitted extensive mitigation evidence to the Acting United States Attorney on or about February 15, 2021.

v. Leon, 203 F.3d 162, 164 (2d Cir. 2000) ("[F]ederal court[s] lack[] the power to render advisory opinions." (internal quotation marks omitted)).

Such is the case here. The government may decide to not seek the death penalty against Healy, thus obviating the need for the Court to rule on his motion to bar the government from doing so. Indeed, analyzing Healy's claimed harm—that a jury will be unable to hear evidence from certain mitigation witnesses made unavailable during the COVID-19 pandemic—places the speculative nature of Healy's motion in sharp relief, because he only has the right to present such mitigation evidence if the case proceeds as a capital case. See 18 U.S.C. § 3592(a) (requiring finder of fact, in determining whether a sentence of death is to be imposed, to consider any mitigating factor).[4]

At least one appellate court facing a similar circumstance has declined to rule on a motion to preclude the government from seeking the death penalty prior to the government's in fact deciding to do so. Specifically, in United States v. Breeden, 366 F.3d 369 (4th Cir. 2004), the Fourth Circuit affirmed the district court's denial of a motion to strike the government's notice that it intended to seek a sentence of death pursuant to 18 U.S.C. § 3593(a). In doing so, the Fourth Circuit found that the district court had correctly delayed ruling on a prior motion to preclude the government from even filing such a notice, because "delaying [the] ruling [until the government had in fact filed a death notice] allowed for the possibility that the Government would elect not to seek the death penalty." Id. at 373. The Court should do the same here.

A similar motion was made in United States v. Savage, a death-eligible case from the Eastern District of Pennsylvania. The defendant, also prior to a determination regarding the death penalty, advanced the argument that counsel did not have sufficient time to prepare their mitigation presentation to the U.S. Attorney's Office and the Capital Case Review Committee. The Government responded that the defendant had no constitutional or substantive rights to present evidence in support of mitigation to the U.S. Attorney's Office or to the Department of Justice. The Government also argued that based on the trial schedule, defendant's counsel would have more than enough time to prepare for the penalty phase of trial. United States v. Savage, Crim. No. 07-550-06, 2011 WL 6747479, at *2 (E.D. Pa. Dec. 23, 2011). Relevant here, the district court held that "[a]s a threshold matter, the Government ha[d] not yet filed a notice of intent pursuant to 18 U.S.C. § 3593. Therefore, [the

---

[4] Indeed, Healy incorrectly states, on several occasions, that this is a "capital murder case" rather than a noncapital one—citing case law and ABA standards that pertain to certain procedural and evidentiary issues specific to capital-authorized cases. See Def. Mot. at 5-6. Healy's citation to, and reliance on, those standards is premature, as the government has not indicated that it intends to seek a sentence of death as to Healy.

d]efendant's challenge to the imposition of the death penalty [wa]s premature." Id. (citing Wyatt v. Gov't of the V.I., 385 F.3d 801, 806 (3d Cir. 2004) ("A dispute is not ripe for judicial determination if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.")).[5]

More recently, a defendant facing capital charges in the Eastern District of New York filed a nearly verbatim motion to that which defendant has filed here. See United States v. Snipe, Crim. No. 18-609 (RJD). In Snipe, the district court ruled that "[d]efendant Snipe's motion seeking a declaration from the Court that his capital prosecution is unconstitutional is denied with leave to renew. Because the government has not yet given notice that it intends to seek a sentence of death against Mr. Snipe, the motion is premature at this time." (Order denying Motion, Crim. No. 18-609, Dkt. No. 234, May 4, 2021).

This Court should reach the same conclusion as those reached in Snipe and Savage, as Healy's motion is also premature since the Government has made no decision regarding the death penalty.

**No Statutory or Other Legal Authority Supports Defendant's Motion**

In any event, Healy has failed to identify any statutory or other legal authority to support his request. Statutorily, if the government decides to seek the death penalty, the government,

> shall, a reasonable time before the trial or before acceptance by the court of a plea of guilty, sign and file with the court, and serve on the defendant, a notice—
>
> (1) Stating that the government believes that the circumstances of the offense are such that, if the defendant is convicted, a sentence of death is justified under this chapter and that the government will seek the sentence of death; and
>
> (2) Setting forth the aggravating factor or factors that the government, if the defendant is convicted, proposes to prove as justifying a sentence of death.

18 U.S.C. § 3593(a). The Second Circuit has opined that § 3593(a) "specifies that a death penalty notice must be given a reasonable time before the trial, but affords no guidance as to how to assess reasonableness, nor does it

---

[5] As discussed below, the Savage court also went on to deny the Defendant's motion on its merits.

address the remedy to be fashioned if reasonable notice is not given; moreover, there is no legislative history addressing those issues." United States v. Robinson, 473 F.3d 487, 491 (2d Cir. 2007) (internal quotation marks and citation omitted). However, because no trial date has been set in this case, there can be no claim that the government has failed to follow the statutorily mandated process—particularly here, where the government is awaiting Healy's mitigation submission to proceed. Cf. United States v. James, Crim. No. 02-778, 2007 WL 2713359, at *1 (E.D.N.Y. Sept. 13, 2007) (observing that government complies with § 3593(a) notice requirement "by giving notice of its intention to present evidence of future dangerousness well in advance of trial").

Rather, Healy apparently argues that—despite the government's compliance to date with the governing statutes—the government has denied him his "Fifth Amendment right to due process, Sixth Amendment right to effective assistance of counsel and Eighth Amendment right to be free from cruel and unusual punishment." Def. Mot. at 3. He does not specify how each of these rights has been violated, other than implying that he has a right to present mitigation evidence to the Attorney General and that any impingement of that right entitles him to the remedy of preclusion of the death penalty at this early stage, notwithstanding the government's willingness to provide additional time. In Savage, the court addressed this perceived "right" and rejected it outright. Specifically, the court made clear that "the death penalty protocol does not create enforceable rights. In fact, the USAM states that it "provides only internal Department of Justice guidance" and "is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable at law by any party in any matter civil or criminal." Id. at *3.

A majority of courts, including the Third Circuit, have confirmed that the guidelines contained in the USAM, now known as the Justice Manual, do not create substantive or procedural rights for a defendant. See id. at *3; see also United States v. Wilson, 413 F.3d 382, 389 (3d Cir. 2005) ("Department of Justice guidelines and policies do not create enforceable rights for criminal defendants"); United States v. Gomez, 237 F.3d 382, 389 (3d Cir. 2000) (stating that any argument that the USAM creates rights "would be against the weight of judicial authority"); United States v. Lee, 274 F.3d 485, 493 (8th Cir. 2001) (holding that the death penalty protocol is unenforceable and that any violation of it did not entitle defendant to a new penalty hearing).

Defendant's other explanation for these claimed constitutional violations is that the Trump Administration's executive policies and actions regarding the COVID-19 pandemic have somehow caused a potential, hypothetical, and speculative loss of mitigation evidence (should the case even proceed capitally), which violates his constitutional rights.

The Third Circuit has held that "[i]n situations where a defendant claims that the government destroyed evidence that might have proved exculpatory, the defendant has the burden of proving the government's bad faith in ordering or permitting the loss or destruction of the evidence," and "absent a showing of bad faith there is no due process violation." United States v. Christian, 302 F. App'x 85, 87 (3d Cir. 2008) (citing United States v. Deaner, 1 F.3d 192, 200 (3d Cir.1993)).

In addition to the "bad faith" showing, "[t]o establish a violation of the right to present a defense based on lost evidence, a defendant must show that the evidence was material and exculpatory, and that it was 'of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.'" Buie v. Sullivan, 923 F.2d 10, 11 (2d Cir. 1990). "Finally, the misconduct must demonstrate that the absence of fundamental fairness infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." Id. (internal quotation marks and alterations omitted); see also United States v Santtini, 963 F.2d 585, 597 (3d Cir. 1992) ("As a general matter, even when actions by the prosecution appear to deprive a criminal defendant of his constitutional right to present a defense, no remedy will lie for such infringement absent a showing that the government has caused the unavailability of material evidence and has done so in bad faith.").

Healy has not shown materiality, bad faith, or a lack of fundamental fairness. Nor could he at this premature stage. Healy has failed to demonstrate materiality or a lack of fundamental fairness because it is impossible to assess at this stage in the litigation—before Healy's right to even put forth mitigation evidence to the jury has become ripe—any importance that such evidence might have to a jury. In fact, Healy has not even identified any actual mitigation evidence that he has been prevented from acquiring. Rather, Healy asserts that he may not be able to present mitigation evidence from, for example, "a mitigation witness who died from the coronavirus," "got 'brain fog' from the coronavirus," or presently "refused to meet with the defense team" due to fears of contracting COVID-19. See Def. Mot. at 8 (describing hypothetical "irreparable harm" from executive administration's handling of COVID-19 pandemic). Of course, as to the latter concern (refusal to meet with counsel due to fears of contracting COVID-19), such harm is easily ameliorated—notwithstanding Healy's generalized conclusion to the contrary—by allowing Healy sufficient time to conduct a mitigation investigation.

Healy nonetheless urges that allowing him additional time "does not account for evidence that may have been permanently lost, obscured, destroyed or altered during the coronavirus pandemic." Def. Mot. at 10. But defendant cites no such evidence in this case. In the motion filed before Judge Dearie in Snipe, counsel cited a specific example of "lost evidence", the

testimony of a potential mitigation witness, Snipe's grandmother, who apparently died in February 2021 from COVID. Id. at 9. Here, Healy has cited only hypothetical "categories" of lost evidence.

However, even assuming such lost opportunity, the record is far from fully developed regarding the substance and scope of any mitigation investigation or any alternative means to present comparable mitigation evidence, should the need to do so even be necessary. Even if the Government decides to seek the death penalty, a trial in this case could be one to two years away, giving Healy additional time, post-pandemic, to fully investigate mitigation for presentation to a jury.

In any event, Healy has failed to demonstrate any denial of his right to due process because he has not established that the government acted in bad faith in causing any loss of potential mitigation evidence. See, e.g., United States v. Kennedy, 720 F. App'x 104, 108 (3d Cir. 2017) (no due process violation where defendant failed to establish that government acted in bath faith by failing to preserve video of defendant's arrest).

Indeed, although Healy complains that actions taken by the previous executive administration "prolonged and worsened" the COVID-19 pandemic, he does not assert that any government action was taken "in order to prejudice" Healy, or somehow otherwise demonstrated "bad faith on the part of the prosecutor" that resulted in any loss of evidence. See United States v. Pepin, 367 F. Supp. 2d 315 (E.D.N.Y. 2005) (denying motion to strike death notice as untimely where, among other reasons, "there has been no indication that the government delayed the filing of its death notice in order to prejudice defendant [and] . . . [t]here is no suggestion of bad faith"); cf. United States v. Youngblood, 488 U.S. 51 (1988) ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.").

Moreover, the purported rule that Healy advances—that macro executive branch policy equates to bad faith in an individual criminal prosecution—would produce absurd results. Healy cites no case law in support of the proposition, nor could he.[6] To the contrary, in Valle v. Quarterman, Crim. No.

---

[6] The defendant asserts, citing to a law review article, that "Youngblood has come under increased criticism." Def. Mot. at 10. Regardless, it remains the law in this Circuit. See, e.g., United States v. Kennedy, 720 F. App'x at 108 (citing Youngblood positively for the proposition that defendant must establish that government deliberately failed to preserve evidence to support due process claim); United States v. Jones, 503 F. App'x 174, 178 (3d Cir. 2012) (same); United States v. Deaner, 1 F.3d 192, 200 (3d Cir. 1993) (same). But even applying defendant's apparent assertion—drawn from a Ninth Circuit case—

06-3867, 2008 WL 416241 (S.D. Tex. Feb. 13, 2008), the defendant asserted that he was denied due process because the state had sought the death penalty where the defendant was unable to present live testimony by Cuban mitigation witnesses, "who were, due to the state of diplomatic relations between Cuba and the United States, unable to travel to Texas to testify." Id. at *6.  The court found that the defendant's "situation [wa]s no different than one who desires the testimony of witnesses who are deceased or who are unwilling to testify and who are beyond the subpoena power of the court." Id.  Consequently, the court concluded that strained foreign relations did not implicate any constitutional issue regarding a defendant's right to present mitigation evidence. Id.  Such is the case here.

---

that the bad faith inquiry should turn on the "government's knowledge of the apparent exculpatory value of the evidence at the time it was lost or destroyed," Def. Mot. at 10 (internal quotation marks omitted), defendant's argument still fails.  Critically, the defendant does not assert that the government somehow knew the defendant's hypothetical mitigation witnesses had exculpatory information, and then somehow used the COVID-19 pandemic to interfere with the defendant's ability to present any such testimony that witness could provide.  To be sure, any such assertion would be nonsensical.

**Conclusion**

   Healy's motion is premature and any ruling on the merits would amount to an advisory opinion given the hypothetical and speculative nature of his present claim.  Thus, this Court should deny his motion as premature or stay any decision until such time that the mitigation process concludes and the government files a notice to seek the death penalty.  Should this Court reach the merits of Healy's claim, this Court should find that his motion is entirely unsupported by any statutory or other legal authority.  In short, the government respectfully requests that the Court deny Healy's motion.

              Very truly yours,

              RACHAEL A. HONIG
              Acting United States Attorney

              By: ROBERT FRAZER
                 NAAZNEEN B. KHAN
                 Assistant U.S. Attorneys

cc. Stephen Turano, Esq.
   Thomas Ambrosio, Esq.